UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

PAUL E. ULINSKI,

Plaintiff,

v.

BROTHERHOOD OF RAILROAD SIGNALMEN
LOCAL 56,

Defendant.

---

**MEMORANDUM AND ORDER**

19-CV-3627 (LDH) (CLP)

LᴀSHANN DᴇARCY HALL, United States District Judge:

Plaintiff Paul E. Ulinski, proceeding pro se, brings the instant action against Defendant

the Brotherhood of Railroad Signalmen Local 56 ( "Local 56") pursuant to the Labor

Management Relations Act (the "LMRA"), 29 U.S.C. §§ 141 *et seq.*; the National Labor

Relations Act (the "NLRA"), 29 U.S.C. §§ 151 *et seq.*; the National Apprenticeship Act (the

"NAA"), 29 U.S.C. §§ 50 *et seq.*; the Age Discrimination in Employment Act (the "ADEA"), 29

U.S.C. §§ 621 *et seq.*; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e

*et seq*; and the Railway Labor Act (the "RLA"), 45 U.S.C. §§ 151 *et seq.*  Defendant moves

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the

complaint in its entirety.[1]

## BACKGROUND[2]

Plaintiff was hired by the Long Island Railroad on November 14, 2014.  (*See* Sec. Am.

Compl. at 6, ECF No. 19.)  From the start of his employment until his termination on December

---

[1] In the alternative, Defendant moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on all claims.  (Def.'s Mem. L. Supp. Mot. Dismiss ("Def.'s Mem.") 22–25, ECF No. 25.)  The Court declines to entertain a motion for summary judgment.

[2] The following facts are taken from the second amended complaint and are assumed to be true for the purpose of this memorandum and order.  (ECF No. 19.)  The Court also considers the collective bargaining agreement ("CBA")

10, 2018, Plaintiff was a member of Local 56 subject to a collective bargaining agreement ("CBA").  (*Id*.)

The second amended complaint generally lacks cohesion and clarity.  As best as can be ascertained, Plaintiff complains of age discrimination and breach of duty by Local 56 and its officers.  (*See id*. at 6–8.)  According to Plaintiff, between February 2015 and December 2018, Local 56 members and officers "made repeated and frequent age discriminatory comments."  (*Id*. at 7.)  Between January 2018 and March 2018, Local 56 management assigned employees under the age of 40 more favorable duties and assignments.  (*Id* at 7.)  In October 2018, Plaintiff was subjected to disciplinary action that younger employees were not.  (*Id*. at 8.)  On November 28, 2018, Local 56's second vice president referred to Plaintiff as a "old man," moments before he was to take a professional exam.  (*Id*. at 6.)  In addition, signage was posted to the examination entrance door reading, "NO OLD MAN!"  (*Id*. at 6.)

In December 2018, Local 56 "let the breach of an agreed four (4) year period to qualify as a Signalman go unrepaired."  (*Id*. 7.)  That same month, Local 56 management allowed two younger employees to "have a longer than the standard four (4) year period to qualify" as a signalmen.  (*Id*. at 8.)  The CBA provides that, "Helpers must qualify as Assistant Signalmen within the first four years of employment as a Helper.  Should a Helper be unable to qualify as an Assistant Signalmen then he or she shall, subject to mutual agreement of the parties, remain a Helper . . . ."  (Dec. 12, 2019 Decl. Christopher Natale ("Natale Decl."), Ex. 1A at 72, ECF No. 25-1.)

---

incorporated by reference in the second amended complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) ("For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  Citations to the second amended complaint refer to the pagination assigned by the Court's ECF system.

Plaintiff was terminated on December 10, 2018, due to "lack of performance" on his

professional exams.  (Sec. Am. Compl. at 6, 9.)  The date of his termination marked 3 years and

10 months from the date of his hire, two months shy of the "written and agreed four-year period

to be qualified as a maintainer."  (*Id*. at 9.)  Plaintiff alleges that Local 56 "made no rational

decisions" on the cases used as "precedents for [his] termination[.]"  (*Id*. at 7.)

Plaintiff filed a grievance regarding his termination on December 11, 2018.  (*Id*. at 9.)

Plaintiff's grievance was dismissed on December 21, 2018.  (*Id*. at 9.)  According to Plaintiff,

Local 56 officers "arbitrarily ignored and suppressed" information he requested that was

pertinent to his reinstatement.  (*Id*. at 6.)  The representative handling Plaintiff's grievance did

not inform Plaintiff of his right to attend a December 14, 2018 conference with "Signal

Management" or otherwise educate Plaintiff on the rules and procedures and did not provide

Plaintiff with a transcript of the conference.  (*Id*. at 7, 9.)  After learning that his grievance was

dismissed, Plaintiff contacted Local 56 officers to file an appeal.  (*Id*. at 9.)  According to

Plaintiff, the officers declined several of his requests for an appeal and let "the clock run out for

any appeal or arbitration."  (*Id*. at 6.)  Plaintiff was informed on January 7, 2019, via email, that

"the committee is in agreement, with Signal management and that your claim has no merit.  It is

your right to [pursue] this claim on your own."  (*Id*. at 9.)

## DISCUSSION

### I.      Subject-Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.*

*U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing beyond a

preponderance of the evidence that subject-matter jurisdiction exists.  *Id.*  "In reviewing a Rule

12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff[.]'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)).  Further, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.

Because plaintiff is proceeding pro se, the Court must "construe liberally" his complaint and any further pleadings, and "interpret them to raise the strongest arguments that they suggest."  *Cold Stone Creamery, Inc. v. Gorman*, 361 F. App'x 282, 286 (2d Cir. 2010) (internal quotation marks and citation omitted).  However, the Court is not permitted to analyze subject-matter jurisdiction under the same accommodating standard, even when a party is proceeding pro se. *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) ("Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."); *see also Olivadoti v. 290 Riverside Co., LLC*, 12-CV-386 (PAE), 2012 WL 1604906, at *2 (S.D.N.Y. May 8, 2012).

### A.    NLRA and LMRA Claims

Plaintiff purports to bring claims under the NLRA and LMRA.  Congress passed the NLRA "to protect interstate commerce by removing obstructions to the free flow of commerce . . . caused by strikes and other forms of industrial unrest . . . attributable to the inequality of bargaining power between unorganized employees and their employers." *Am. Commc'ns Ass'n, C.I.O., v. Douds*, 339 U.S. 382, 387 (1950).  The statute imposes upon unions a duty of fair representation.  *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) ("The statutory duty of fair representation was developed [] [decades] [] ago.").  An employee may bring suit against a labor

4

union under the NLRA for "breach of the union's duty of fair representation."  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).  The LMRA was subsequently passed to amend the NLRA to remove "additional impediments to the free flow of commerce."  *Am. Commc'ns Ass'n, C.I.O.*, 339 U.S. at 387.  An employee may bring suit against an employer under Section  301 the LMRA "alleging a breach of the collective bargaining agreement."  *DelCostello*, 462 U.S. at 164.  These statutes are, however, inapplicable to this case.

As Defendants aptly note, the terms of the NLRA and LMRA expressly exclude from their reach "any person subject to the Railway Labor Act" and any "individual employed by an employer subject to the Railway Labor Act."  29 U.S.C. § 152 (2), (3).  Plaintiff was employed by the Long Island Railroad.  (Sec. Am. Compl. at 6.)  The Long Island Railroad is undoubtedly a carrier subject to the RLA.  *See United Transportation Union v. Long Island R.R.*, 455 U.S. 678, 682 (1982) ("The [Railroad] is subject to the terms of the Railway Labor Act."), *reversed on other grounds*; *see also* 45 U.S.C. § 151 *First* (defining "carrier").  Therefore, Plaintiff's claim against Local 56 for breach of duty of fair representation is not properly brought pursuant to either the NLRA or the LMRA.

B.      **NAA Claim**

The NAA authorizes and directs the Secretary of Labor "to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices" and "to bring together employers and labor for the formulation" of apprenticeship programs.  29 U.S.C. § 50. Federal regulations promote equal opportunity for apprentices and applicants for apprenticeship in registered apprenticeship programs by prohibiting discrimination based on race, color, religion, national origin, sex, sexual orientation, age (40 or older), genetic information, and disability.  29 C.F.R. § 30.1.

Defendant argues that Plaintiff's claim under the NAA should be dismissed because Plaintiff's positions were not apprenticeships and Plaintiff was not in a registered apprenticeship program. (Def.'s Mem. L. Supp. Mot. Dismiss ("Def.'s Mem.") 8, ECF No. 25.) This argument is appealing. Federal regulations require programs to apply for apprenticeship in order to be classified as such. *See* 29 C.F.R. § 29.3. Moreover, an "apprenticeable occupation" is one which is specified by industry and which must:

> (a) Involve skills that are customarily learned in a practical way through a structured, systematic program of on-the-job supervised learning;
> (b) Be clearly identified and commonly recognized throughout an industry;
> (c) Involve the progressive attainment of manual, mechanical or technical skills and knowledge which, in accordance with the industry standard for the occupation, would require the completion of at least 2,000 hours of on-the-job learning to attain; and
> (d) Require related instruction to supplement the on-the-job learning.

*Id.* § 29.4. Here, Plaintiff fails to allege that any position held by him was an "apprenticeable occupation" as defined in 29 C.F.R. § 29.4.

Moreover, this Court is not convinced that a private cause of action even exists under the NAA. While the Second Circuit has not decided the issue, other courts, including one court in this circuit, have decided that a private cause of action does not lie. *See Funderwhite v. Joint Apprenticeship & Training Comm. of Cleveland Journeymen Plumbers Local No. 55*, 196 F. Supp. 3d 757, 762 (N.D. Ohio 2016) ("It should be reinforced, however, that no private cause of action is authorized under the NAA."), *aff'd sub nom. Funderwhite v. Local 55, United Ass'n*, 702 F. App'x 308 (6th Cir. 2017); *Joint Apprenticeship & Training Council of Local 363, Int'l Bhd. of Teamsters, & United Const. Contractors Ass'n v. New York State Dep't of Labor*, 829 F. Supp. 101, 104 (S.D.N.Y. 1993) ("No intent to create a private right of action for program sponsors is expressed or intimated in the statutory language of the [NAA], nor can one be

inferred from the statute's legislative history."). This Court now holds the same. Accordingly,

Plaintiff's claim under the NAA is dismissed.

## II.     Failure to State a Claim

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). A claim is facially plausible when the alleged facts allow the Court to draw a

"reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this

standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the

Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the

Court must merely determine whether the complaint itself is legally sufficient, and, in doing so,

it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*.

(citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, his pleadings "must be

construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v.*

*Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006)). A pro se complaint, "however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*,

521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per

curiam)). This rule is "particularly so when the pro se plaintiff alleges that [his] civil rights have

been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing

*McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs

asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

### A. Title VII Claim

Title VII prohibits employment discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). At the pleading stage, a plaintiff must allege: (1) that he belongs to a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *Sanders v. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Plaintiff does not allege that he belongs to a protected class. In fact, Plaintiff fails altogether to identify his race, color, religion, sex, or national origin. Instead, Plaintiff complains of age discrimination. (*See* Sec. Am. Compl. at 6–8.) Age is not a protected class under Title VII, and even if it were, Plaintiff fails to identify his age. Accordingly, Plaintiff's Title VII claim is dismissed.[3]

### B. ADEA Claim

The ADEA was enacted to protect employees from discrimination on account of age. *See* 29 U.S.C. § 623. Defendant argues that Plaintiff's claim should be dismissed for failure to exhaust administrative remedies. (Def.'s Mot. 9–10.) Defendant is correct.

A plaintiff may not commence a civil action under the ADEA "until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626 (d)(1); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82–83

---

[3] Defendant also argues that Plaintiff's Title VII claim should be dismissed for failure to exhaust administrative remedies. (Def.'s Mot. 9–10.) For the reasons stated *infra* II.B., the Court agrees.

(2d Cir. 2001) ("A plaintiff may bring an employment discrimination action under Title VII or the ADEA only after filing a timely charge with the EEOC or with a State or local agency with authority to grant or seek relief from such practice." (internal quotations omitted)).  The Second Circuit has made clear that exhaustion of administrative remedies is not a "jurisdictional requirement" but rather "a precondition to bringing such claims in federal court" that is "subject to equitable defenses." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (applying equitable defenses to Title VII); *see also Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24–27 (2d Cir. 1985) (applying equitable defenses to ADEA); *Crossman v. Crosson*, 905 F. Supp. 90, 93 (E.D.N.Y. 1995), *aff'd*, 101 F.3d 684 (2d Cir. 1996) ("[I]n view of the similarities between Title VII and the ADEA, a number of courts have applied Title VII jurisprudence to guide their interpretation of analogous ADEA provisions.").  An equitable defense lies "[w]hen an agency has previously taken a firm stand against a plaintiff's position[;]" or where "recent allegations of discrimination [are] reasonably related to the discrimination about which [the plaintiff] had filed an earlier charge with the EEOC[.]" *Fowlkes*, 790 F.3d at 386–87 (internal quotations and citations omitted).

Here, Plaintiff does not allege that he filed an EEOC charge claiming age discrimination. (*See generally* Sec. Am. Compl., Pl.'s Opp'n Def.'s Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 29.) Nor does Plaintiff allege any facts to support a basis to excuse his failure to exhaust.  (*See generally id.*)  Accordingly, Plaintiff's ADEA claim is dismissed.

## C.     The RLA

The RLA governs labor relations in the railroad and airline industries.  *See* 45 U.S.C. § 151 *et seq.*  The RLA "imposes upon a union the duty to provide fair representation to all members of its collective bargaining unit." *Haerum v. Air Line Pilots Ass'n*, 892 F.2d 216, 219

(2d Cir. 1989).  Generally, regarding the duty of fair representation, the Supreme Court has ruled

that a union's exclusive authority to "represent all members of a designated unit includes a

statutory obligation [1] to serve the interests of all members without hostility or discrimination

toward any, [2] to exercise its discretion with complete good faith and honesty, and [3] to avoid

arbitrary conduct." *Vaca*, 386 U.S. at 177.  As the Second Circuit has recognized, "[t]his

'tripartite standard' applies to . . . disputes under the RLA." *Lindsay v. Ass'n of Prof'l Flight*

*Attendants*, 581 F.3d 47, 61 (2d Cir. 2009) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499

U.S. 65, 77 (1991)).  That said, a court's "substantive examination of a union's performance . . .

[is] highly deferential, recognizing the wide latitude that negotiators need for the effective

performance of their bargaining responsibilities." *Air Line Pilots Ass'n, Int'l*, 499 U.S. at 78.

Accordingly, to state a claim against a union for breach of duty of fair representation, a plaintiff

"must plausibly allege union actions that are wholly arbitrary, discriminatory, or in bad faith."

*Caldarera v. Int'l Longshoremen's Ass'n, Local 1*, 765 F. App'x 483, 487 (2d Cir. 2019)

(internal quotations omitted).  "A union's actions are unlawfully arbitrary only if, in light of the

factual and legal landscape at the time of the union's actions, the union's behavior is so far

outside a wide range of reasonableness as to be irrational." *Id*. (quoting *Air Line Pilots Ass'n,*

*Int'l* 499 U.S. at 67) (internal quotations omitted).  "A finding of bad faith, in turn, requires a

showing of fraudulent, deceitful, or dishonest action." *Id*. (citing *Sim v. New York Mailers'*

*Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)) (internal quotations omitted).  Defendant argues

that against this legal backdrop, Plaintiff's claim must fail.  (*See* Def.'s Mot. 16–18.)  The Court

agrees.

Plaintiff's allegation that Local 56 declined to move forward with his grievance is

insufficient to state a claim because a union's duty of fair representation does not require it to

pursue a grievance that it believes meritless. *See Vaca*, 386 U.S. at 191 (1967) ("The individual employee [does not have] an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."); *Scott v. New York Health & Human Servs. Union*, 1199/SEIU, AFL-CIO, 00-CV-9381 (JFK), 2003 WL 359534, at *6 (S.D.N.Y. Feb. 6, 2003) ("A union need not pursue a grievance that it believes meritless."), *aff'd sub nom. Scott v. New York Health & Human Serv. Union*, 1199/SEIU, AFL-CIO, 109 F. App'x 483 (2d Cir. 2004); *see also Simberlund v. Long Island R.R.*, 421 F.2d 1219, 1226 (2d Cir. 1970) ("[A] union must be free to sift out wholly frivolous grievances which would only clog the grievance process"). On January 7, 2019, Local 56 Union management informed Plaintiff via email that "the committee is in agreement, with Signal management and that your claim has no merit." (Sec. Am. Compl. at 9.)

Plaintiff's allegation that Defendants "declined several justifiable and timely requests for an appeal" fares no better because there can be no breach of the duty of fair representation based on the union's decision not move forward with an appeal where the employee is "authorized to pursue [the] grievance[] without union involvement." *Spellacy v. Airline Pilots Assn.-Intl.*, 156 F.3d 120, 130 (2d Cir. 1998); *see also Greenberg v. Int'l Union of Operating Engineers*, *Local 14-14B*, 588 F. App'x 5, 7–8 (2d Cir. 2014) (dismissing claim against union). Rule 50(b) of the CBA provides: "If a disallowed claim or grievance is to be appealed, such appeal must be in writing and must be taken within 60 days from receipt of notice of disallowance, and the representative of the Carrier shall be notified in writing within that time of the rejection of his/her decision." (Natale Decl., Ex. 1A at 23.) Plaintiff does not allege that he followed this procedure.

11

To the extent Plaintiff's claim is based on the allegation Local 56 Union assigned younger workers more favorable duties and assignments to Plaintiff's disadvantage, this allegation is also insufficient to state a claim. *See Caldarera*, 765 F. App'x at 487 (2d Cir. 2019) ("[Plaintiff's] assertion that [the union] breached its duty of fair representation by itself steering him into less desirable work assignments fares no better.")

Finally, Plaintiff's remaining allegations, including that the union enforced the CBA "in a perfunctory fashion," allowed for a "weak foundation for his termination," and "arbitrarily ignored and suppressed" information he requested are wholly conclusory. (Sec. Am. Compl. at 6–8.) Simply put, Plaintiff alleges no facts to support a "finding of bad faith" or "fraudulent, deceitful, or dishonest action." *Caldarera*, 765 F. App'x at 487. Accordingly, Plaintiff's RLA claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim is GRANTED.[4] The complaint is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      November 24, 2020

/s/ LDH
LASHANN DEARCY HALL
United States District Judge

---

[4] Defendant moves for dismissal of Plaintiff's claims against "Christopher Natale," "Michael "Sullivan, and "Michael Stewart" under the ADEA and Title VII because neither statute provides a cause of action against individuals. (*Id.* 14.) Likewise, Defendant urges dismissal of Plaintiff's claim against these individuals under the RLA because union officers and employees cannot be held liable for actions performed as union representatives during the collective bargaining process. (*Id.* 15.) These arguments have merit. However, Christopher Natale, Michael Sullivan, and Michael Stewart were not named as defendants in the second amended complaint. (*See* Sec. Am. Compl.) As a result, they were terminated from this action on November 1, 2019.